## Heckman's Estate.

Argued January 28, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*D. Edward Long,* with him *J. Glenn Benedict,* for appellant.—The words "subject to dower for my wife, if

living" were intended to provide the wife with such estate as the law would give her; testator used the term "dower" in its popular sense meaning "the widow's share," "the share the widow is entitled to by law" or "what the widow might elect to take against the will": Feuerstein v. Bertels, 221 Pa. 425; Roger's Est., 24 Pa. Dist. R. 824; Durbin v. Redman, 40 N. E. 133.

Doubts in a will are resolved in favor of the wife who takes under the will in lieu of her rights under the intestate law: Tarter's Est., 291 Pa. 462; McClellan's Est., 211 Pa. 205, 208; Finney's App., 113 Pa. 11.

*W. K. Sharpe,* with him *J. R. Ruthrauff,* for appellee. —It is significant to notice that if the wife died during the five-year period, or at any time before the sale of the farms, she took no part of the corpus of his estate, either real or personal. The income given her during this period marked the utmost extent to which she was to share in his estate. Whether she should have any further interest depended upon her being alive when the farms were sold, and, if alive, they were to be sold "subject to dower for my wife."

OPINION BY MR. JUSTICE SCHAFFER, March 17, 1930: Benjamin Heckman, a prosperous farmer, died leaving a will which provided: "I give, devise and bequeath to my wife, Annie Heckman, all of my real estate consisting of (4) four farms, three in St. Thomas Township and one in Peters, for the term of five (5) years. At the end of the five-year period or at my wife's death, if she should die within the five years, I direct that these farms be sold to my sons or daughters, or both, if they can agree upon prices, and my wife consents, subject to dower for my wife, if living." The will was written by a country justice of the peace. The widow survived the five-year period, the farms were sold, the proceeds await distribution, and the question for decision is how much of the fund goes to the widow as "dower." She contends one-

third of it absolutely, and the auditor to whom the matter was referred so held. The court determined otherwise and awarded to her but a life interest in one-third of the fund. We agree with the auditor. The will was executed in 1920, three years after the passage of the Act of June 7, 1917, P. L. 429, which provides (section 3, page 434) : "The shares of the estate directed by this act to be allotted to the widow shall be in lieu and full satisfaction of her dower at common law, so far as relates to land of which the husband died seized;......" Under this act, the share passing to the widow, there being more than one child, is one-third of the real and personal estate.

At the time the will was executed, there was no such thing strictly speaking, as dower; the widow's share was in lieu and full satisfaction of her dower at common law. In common parlance, however, the widow's share in her husband's estate continued to be spoken of as her dower, and we think it may be fairly inferred that the testator and the scrivener so used the term—the interest which the law conferred upon her. If this is not what he gave her, she got nothing, as there was no such thing as dower in its technical sense. The residuary clause is to the wife for life, at her death the residue to her children, which goes to show that the testator knew how to limit a gift to a life estate if he wanted to. As against the presumption that he knew dower was but a life estate, we think it more logical to conclude that he knew what interest the law conferred on his widow and used the term in that sense.

In other jurisdictions the use of the word "dower" has been held to cover the widow's interest passing to her under the law in lieu of dower, rather than dower in its strict common law acceptation: Durbin v. Redman, 140 Ind. 694, 40 N. E. 133; Woodford's Exrs. v. Woodford, 44 N. J. Eq. 79, 14 Atl. 273; Holmes v. Holmes, 54 Minn. 352, 56 N. W. 46; Paine v. Gupton, 30 Tenn. 402; Larned v. Larned, 98 Kan. 328, 158 Pac. 3. Judge GEST

of the Orphans' Court of Philadelphia, whose opinions are always entitled to great respect, said in Roger's Est., 24 Pa. Dist. R. 824, "Assuming that the testator did not use the word 'dower' in its strict technical meaning, ......he must have intended by 'dower' that interest in his estate, real and personal, which the widow might, if she chose, elect to take against his will under the intestate laws."

The decree of the court below is reversed, with directions to make distribution to the widow of one-third of the fund absolutely; costs to be paid out of the estate.