FRANK v. COMMISSIONER OF INTERNAL REVENUE.

No. 4569.

Circuit Court of Appeals, Third Circuit.

Aug. 18, 1931.

Edward F. Hitchcock and David J. Myers, both of Philadelphia, Pa., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON and DAVIS, Circuit Judges, and SCHOONMAKER, District Judge.

DAVIS, Circuit Judge.

This case is here on petition of Jacob W. Frank to review the determination of the United States Board of Tax Appeals of his income tax return for the year 1923.

There is no dispute as to the facts. The dispute arises over the interpretation of undisputed facts contained in an agreement between the taxpayer and his estranged wife. The taxpayer owned a piece of real estate, known as No. 2025 Chestnut street, Philadelphia, Pa., which he desired to sell; but his wife would not sign the deed of conveyance unless she was paid $40,000, which was about one-half of the net amount which he received out of the purchase price. The $40,000 was paid to her in 1923.

In reporting his income for the year 1923, the taxpayer did not include the $40,000, but the Commissioner of Internal Revenue refused to allow the deduction on the ground that the payment was in the nature of alimony, and on appeal, the Board of Tax Appeals sustained the determination of the Commissioner and the case was brought here on appeal.

After having been married 26 years, domestic difficulties arose between Dr. Frank and his wife in the year 1917, and he instituted a suit against her for divorce in March, 1919. She thereupon filed application for counsel fees and alimony pendente lite. She was allowed $100 per month alimony. Nothing further appears to have been done in this suit, and on May 9, 1922, Mrs. Frank prepared and executed a libel for divorce from her husband but it was not filed until October 14th of that year.

The suit of Dr. Frank had not been brought to trial in August, 1922, when on the 22nd of that month he and his wife entered into an agreement with respect to the sale of the real estate and the payment of the $40,000. It is recited in the agreement that Mrs. Frank was unwilling to execute a deed to the purchaser and divest herself of her inchoate rights in the premises under the intestate laws of Pennsylvania unless her husband paid her $40,000 for so doing. The agreement provided that the deed was to be executed, placed in escrow with the Republic Trust Company of Philadelphia until the termination of the divorce proceedings which Dr. Frank had instituted against his wife or which she had instituted against him. The agreement further provided: "And in the event that a final decree be entered in favor of the party of the second part in the proceeding instituted by her against the party

of the first part, or in favor of the party of the second part, then the said sum of $40,000 shall be paid over by the said Republic Trust Company to John R. K. Scott, Esquire, attorney for the party of the second part; or in the event of the discontinuance of said proceedings, and in the event that a final decree divorcing the parties hereto be not entered by the Court within one year from the date hereof, then the said sum of $40,000 together with deed mentioned hereinafter in paragraph two shall be returned to the party of the first part."

The deed was executed, placed in escrow, the divorce granted to Mrs. Frank within the year, and the $40,000 was paid in accordance with the agreement.

Section 213 (a) of the Revenue Act of 1921 (42 Stat. 237), which controls this case, provides that "gross income" includes gains, profits, and income derived from sales, or dealings in real and personal property, growing out of the ownership or use of or interest in such property.

Section 215 (a) of the act (42 Stat. 242) provides that in computing net income, no deduction shall in any case be allowed in respect of living or family expenses, and Article 291 in Treasury Regulations No. 62 provides that "alimony and an allowance paid under a separation agreement are not deductible from gross income."

The taxpayer contends that the $40,000 was paid Mrs. Frank for her interest in the land in question and not as alimony. This is the real question and must be decided by the interpretation of the agreement in the light of the surrounding circumstances.

The parties understood that Mrs. Frank had an "interest in" the real estate and was unwilling to "divest herself of her inchoate rights in said premises under the intestate laws of Pennsylvania" unless she received $40,000 as a consideration for so doing. It appears that Mrs. Frank was not mistaken as to her "inchoate rights" in the property.

The Wills Act of 1917, P. L. 403, of Pennsylvania (20 PS § 261), provides that: Section 23 (a). "When any person shall die testate, leaving a surviving spouse who shall elect to take against the will, such surviving spouse shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate."

The Intestate Act of the same year, 1917, P. L. 429 (20 PS § 1), provides: Section 1(a). "Where such intestate shall leave a

spouse surviving and one child only, or shall leave a spouse surviving and no children ⁕ * * the spouse shall be entitled to one-half part of the real and personal estate."

Mrs. Frank, therefore, had "an interest" in the real estate, and there was no way by which she could be divested of this interest by her husband, and the only way by which he could sell the property and give a clear title to it was by paying her the $40,000. This was not a gift to her by the husband, but was the price of her interest in her inchoate rights in the property. Burk's Appeal, 75 Pa. 141, 15 Am. Rep. 587; Hannan v. Carroll, 283 Pa. 61, 128 A. 657; Heckman's Estate, 299 Pa. 369, 149 A. 646.

While the agreement recites that "unhappy differences have arisen between the parties hereto," it nowhere even hints that this payment of $40,000 was in the nature of or in lieu of alimony. The statement of domestic difficulties between them is simply explanatory of the agreement, for when husband and wife sell property under ordinary circumstances, they do not enter into such written stipulation.

The agreement further provided for the conveyance by Mrs. Frank of premises located at No. 2631 Myrtlewood street, Philadelphia, but nothing whatever is said about alimony.

Mrs. Frank had two rights, an inchoate right in the property, both real and personal, of Dr. Frank, and a present right to alimony. The agreement settled her rights in the properties mentioned therein, but it is silent as to whether or not Dr. Frank had other property and as to whether or not the divorce settled her rights as to alimony.

The Board says that in the light of the circumstances, the institution of divorce proceedings by Dr. Frank against his wife, and the execution of a libel for divorce by her to be thereafter filed against him, affecting their affairs at the time they entered into this agreement on August 22, 1922, it is obvious that the thought uppermost in their minds at this time was the solution of their domestic difficulties.

But this is only an inference contrary to the facts expressed in the agreement and is not justified, for they were not thinking of income taxes or deductions at that time. The agreement itself discloses its object which it sought to accomplish and the circumstances under which it was executed. We think that a fair interpretation of its provisions shows that the object of Dr. Frank was to take advantage of an opportunity to sell the proper-ty, and the intention of Mrs. Frank was to prevent that sale unless she secured an equivalent of her inchoate rights in the two properties. She was represented by very capable counsel and certainly was informed as to her rights. We, therefore, think that the inference that this $40,000 was a payment in lieu of alimony is an assumption which is contrary to a fair interpretation of the facts.

The determination of the Commissioner and redetermination of the Board are set aside, and the return of the taxpayer is approved.